Would the clerk call the first case please? 3-13-07-62 The Department of Transportation of the State of Illinois Appellee by Amanda Rip v. Kotara, Embry-Braycock Appellants by Lenny Asaro Mr. Asaro, good morning. Good morning. Would you come up? Yes. Thank you. Good morning. Good morning. Counsels, may it please the court. My name is Lenny Asaro, and as indicated, I am the attorney for Kotara, LLC and Embry-Braycock, Ltd., the appellants in this case, otherwise known as Kotara. Kotara is the property owner of a grocery store property in Braidwood, Illinois. This case comes to you because there was no trial whatsoever in this case. In this case, IDOT moved to bar all of the owner's valuation evidence and all of the zoning facts. As a result, a motion for summary judgment was entered, and that just compensation number was based solely on IDOT's evidence. Kotara submits to this court that the rulings were erroneous as a matter of law, in addition to, given the drastic nature of the motions to bar all of the evidence in this case, it was absolutely unjust to the owner, but getting to the law. Kotara respectfully requests that this court reverse the ruling on IDOT's motions in Liminate 3, 4, and 8, because under Illinois eminent domain law, the zoning variance facts that are discussed in the briefs, as well as the valuation opinions for damage to remainder that are based on those facts, are admissible under Illinois law. Second, reverse the ruling on Kotara's motions in Liminate 22 and 23, because under Illinois law, the zoning assumptions that all the appraisers made in their initial appraisals before the zoning variance facts came to light are inadmissible because they are based on insufficient evidence to show that there is a reasonable probability of obtaining a zoning variance. Third, reverse the court's ruling on IDOT's motion in Liminate 2, because the record in this case is unequivocally clear. Kotara's appraisers did not value the grocery store as a special use property. The facts are clear and unequivocal. They valued the property using the sales comparison approach. They valued the property based on the existing use, just like IDOT's appraisers did, and they used comparable sales to develop their opinion of market value for the property. There's no evidence whatsoever that they valued income, the business, or the profits derived from the use of the property. Next, reverse the court's ruling on the motion for summary judgment, because it was based on the aforementioned rulings. Third, reverse the trial court's ruling on the motion for declaratory judgment. That has to do with what is the property, what's being appraised, what's being taken, and what is the remainder that's being damaged. In this particular case, the facts in the law establish that the whole property is 2.05 acres. It includes the so-called disputed area, which is a 175 feet by 25 foot area that contains 12 parking spaces. IDOT asserts that this area is not part of the whole property. Is that a question of law or a question of fact as to whether that extra strip?  The motion for declaratory judgment is a question of law. It's a question of law for this reason, because we had asked the court to make a declaratory judgment under Illinois law. It's allowed to review the deed and to review the legal description and to make a determination as to whether or not the legal description describes and indicates that the whole property that my client purchased in 2005 is 2.05 acres. So under the law, the court is allowed to do that. So it is, to answer your question, yes, a question of law. And just as a point of clarification, this isn't an additional part of land. This has always been the property. Okay, so then you're saying the trials court made a mistake of law. Well, actually, the trial court didn't even rule, so to speak. The trial court denied our motion for declaratory judgment, and they denied IDOT's motion for determination that the whole property includes 2.05 acres. So the court never said, never even engaged in a deliberation as to why he was ruling. He just said, I'm denying it. And his order says the parties are to discuss presentment of the issue at trial. I don't understand what that means, but he didn't rule, essentially. And so what we're saying is he should have ruled. And since he didn't rule and we're before you, we're asking you to rule or send it back and order the trial court to rule. Hopefully that answers your question. Yes. Okay, thank you. And then lastly, if this court remained the case back to the trial court, for a jury to decide just compensation, that's what all condemnation cases are about. Owners don't like the numbers that the government has. The government doesn't like the valuation numbers that the owner has. At the end of the day, our system is set up so that a jury hears that evidence, that's admissible, and then they decide. They have to decide a number between the lowest number and the highest number. And that's how our system works. And that's all that we're asking for in this case. Regarding IDOT's motions, eliminate 3, 4, and 8, it's undisputed that prior to the IDOT taking in this case, the property was legal nonconforming with the parking requirement and the landscape requirement. The parking required 167 parking spaces. There were only 96. The zoning required landscaping and there was none. All of the appraisers in this case, when they got the assignment to value the property, they had to value the park taken, which was approximately .30 acres, as well as whether or not there was damage to the remainder. With regard to damage to the remainder, which is the evidence that's at issue here, the appraisers develop an opinion of highest and best use and they determine what's the fair market value of the remainder before the taking, what's the fair market value of the remainder after the taking. All the appraisers concluded that there was damage to the remainder. No dispute. All the appraisers concluded that the legal nonconforming zoning for the property regarding the parking would carry over to the remainder. The taking in and of itself eliminated 19 parking spaces and reduced the size of the property by 14%. So they all made this assumption. And based on that assumption, they all developed opinions of value for the remainder based on the existing grocery store use and that it would carry over into the remainder. Notwithstanding the loss of parking or change in parking. This was a zoning assumption. And we point to the appraiser reports that are in the record where they state that they made assumptions regarding zoning. Subsequent to this, they all had different opinions as to the amount of damage to the remainder. The next thing that happened was IDOT, after the parties exchanged appraiser reports, IDOT disclosed in a Rule 213 answer that they were going to call the Braidwood City Administrator, Andy Galati. And what was he going to testify about? They said he was going to testify about the zoning on the property and the impact of the regulations on the property. That was their disclosure. Subsequently, Andy Galati executed an affidavit where he indicated that counsel for IDOT called him, talked to him about the zoning and the impact on the property, and asked him to review IDOT's plans to reconfigure the remainder and indicated that he would be called to testify at trial. Mr. Galati responded by saying, well, a variance for the remainder is required as a result of the taking. The parking is no longer legally nonconforming. It's now nonconforming as a result of the taking and loss of parking. And he indicated that a variance is required. That information was also communicated to Katara. What happened next? When that information was communicated, we indicated to IDOT that we'll go ahead and file an application for a variance. My client's other attorney filed that application for a variance, and IDOT was given the opportunity to appear at those hearings as now they were an adjacent property owner because they'd already acquired the part taken. So as an adjacent property owner, they had a right to go to that hearing, present their plans, and explain their position. They didn't participate in that hearing in any way, shape, or form. IDOT's attorney, I'm sorry, Braidwood's attorney at the Hearing and Planning and Zoning Board said a variance is required as a result of the taking. The parties agreed to hold off taking depositions on those initial valuation opinions. Why? Because we assert that IDOT understood, and we clearly understood, that whatever Braidwood had determined was going to be admissible evidence. If Braidwood had determined that the plans, any one of the plans, were acceptable, that would have been admissible evidence. The appraisers would have considered it, and that would have been the basis for their opinions. It turns out that Braidwood denied the application for a variance. Is this the place where your client turned in the lowest number of possible parking space configurations? Actually, it's not. At the Planning and Zoning hearing, what was presented was the plan that was supposed to comply with the zoning code, and keep in mind, and I'm glad you asked that question, the initial parking plans that were prepared did not account for any landscaping at all. In addition to that, the original parking on the property, there were 10-foot spaces. There were 10-foot spaces for the grocery store even before my client bought the property. You can ask yourself, why is it a 10-foot space? It's a grocery store. It's the nature of the use. Cars, big cars, trucks, shopping carts. But there were 10-foot spaces. So what happened was IDOT, in this case, developed parking plans, and they reduced the size of the spaces from 10 to 9. 9 was the minimum at that time. It's no longer 9, it's actually 10 now. So what they did was they put together plans that reduced it to 9. And then what they did is they put parking in other parts of the parking lot where none had previously existed. So that's how you were able to get more parking spaces. So all the plans before didn't account for landscaping. So then when it went to the Planning and Zoning Board of Justice, you had to account for the landscaping. So that reduced the amount of available land that you had, and what was presented was the 10-foot size stalls. So the answer to your question is, multiple plans were presented, but the plan that was presented was 10-foot stalls with the landscaping, which was different than before. And that was a lower amount of parking spaces than IDOT's. But IDOT's plans were also presented at that initial hearing. That was the 77 spaces? I believe that was the 77 spaces, correct. And that's because of the islands, the landscaping, the fence along the railroad line. It's important to understand this property is essentially, it's landlocked from this standpoint. Route 113, Route 53, and the railroad bound the property. There's no other land. They can't expand any further, and there's a property owner next door. So there's no additional land, and it's a 19,000-square-foot building. So when you do the math, there just isn't a lot of excess land. It's an older grocery store from the 1970s. But at that initial hearing, IDOT received, I'm sorry, Bradenton received multiple parking plans, and they received IDOT's plans that showed even more parking than the 77. So they were aware of that, and they stated that in the minutes which we've cited to in the record. Is the landscaping required? Are the islands required? Under the zoning code, the islands aren't required. But the way the parking field is configured, the angle of parking, at least according to the engineer, it's his opinion that it needs to be a component of the parking configuration. I can't speak to, I can tell you, you're asking a question, is it required under the zoning code? The answer to that is no. It is not required under the zoning code. But that, I don't even think, would yield any more than a couple more spaces. So subsequently, after the zoning variance facts came to light, Katara's appraisers reviewed that information and ascertained whether or not it would impact their opinion of value of damage to remainder. They indicated that it did impact their opinion of value of the remainder because the lack of a variance and the fact that it was now an illegal non-conforming property means that in the market, any buyer who comes to look at this property and is potentially interested in buying it has to take that into consideration. It's like if you're looking to buy a piece of property and there is a zoning issue that affects it, that affects how much you're willing to pay for it because it affects how that property can be used. All the appraisers indicated that the only way that this property could be adjusted is you'd have to reduce the building size. It's a 19,000 square foot building on what used to be a 2.05 acre site. The only way you can meet the parking requirement under this existing zoning, without changing the zoning, is to reduce the building size, which means you reduce the required parking. But they go even deeper. The final judge thought there was no need at all for a preference, right, ultimately. And that's one of the reasons you get a very big mistake in your summary judgment. You're absolutely correct, Your Honor. I mean, I've read the statute, and I think it appears as though it's not required. I'm sorry, you read the statute? Well, the ordinance. Oh, I'm sorry, okay. Well, number one, in inmate domain cases, trial courts cannot make the kind of decision like the trial court did in this case. They cannot do a zoning analysis and say, well, I disagree with the municipality's interpretation in a condemnation case, only because the municipality is not before the court. The municipality can't answer for its determination and its analysis. And I would actually point to... You're saying that a trial court, a court, can't interpret a variance? It can. The way it would interpret a variance is if there was a lawsuit that was filed against Braidwood arguing that Braidwood's determination was erroneous. So what does the court do? I mean, without that. I mean, in a case that doesn't involve the city, what does the court do? Does it have to defer to one of two opinions that the city has proper? One saying it does, another saying it doesn't. What I'm saying is that according to the Exchange National Bank case, it cannot be an inmate domain case. And it may sound like an anomaly. It may sound strange. It may sound incongruent. But keep in mind that in the condemnation case, in this case, it's IDOT versus the property owner. It's not IDOT versus Braidwood. I understand that. And so in that particular instance, Braidwood had no opportunity to in any way, shape, or form respond to the trial court's conclusion. And in the record, the trial court didn't state. But Braidwood responded in many ways over the four or five years of this litigation. They interpreted it one way. Others interpreted it another way. Well, actually, Braidwood's legal counsel concluded that a variance is required based on the facts. Well, the legal counsel for Braidwood, at the outset of this litigation, came to that conclusion. No, he did not. Carl Buck was the original attorney. He stated, and it's in the record, at the planning and zoning meeting, and he indicated that he advised IDOT's counsel before the meeting that a variance was required because of the taking. It triggered the loss of the parking. The legal nonconforming status then would not carry over, and so a variance is required. And it's really no different than the First Bank of Schaumburg case. In the First Bank of Schaumburg case, that's a case that involved a restaurant. It involved a widening of a road, taking of parking spaces, and landscaping. And in that particular case, there's no evidence that Schaumburg even weighed in. The parties and the court, there was no issue as to whether or not the property was now illegal nonconforming as a result of the taking. It was accepted. There was no argument or issue on that. And, Your Honor, if I can get back to that point, in the Parr case, which this Court is well aware of, this is what the Parr case demonstrates. In the Parr case, the reason why the evidence of the environmental remediation was not admissible was because IDOT failed to present any evidence that there was an illegal environmental condition. The only place the illegal environmental condition could come from is the Illinois Environmental Protection Agency making a statement, taking a position. So, in the Parr case, then, I assume that, according to IDOT's argument, if the IEPA had spoken, made a determination, then the owner could say, come into the eminent domain court and say, IEPA was wrong, and then you'd have litigation regarding environmental condition on the property within the eminent domain case. That would be a collateral attack because the IEPA and the state would not be part of the case. And all we're saying is, to apply the same rules that apply to us, and then getting to the variance issue, it actually, it pains me to say it, but under the facts, the zoning ordinance, it did trigger the non-conforming, and here's how it did. We stated in our briefs, even though it's not an issue on appeal, Your Honor, the property has a finite size. When you reduce the size of the excess area, what IDOT proposes, all the parking plans call for additional parking to be placed in other parts of the vacant land. Under the zoning ordinance, it says that when you seek to extend beyond the existing property, extend the non-conforming use into other parts of the property, that triggers the zoning ordinance with regards to having to obtain a variance. Unfortunately for my client, that's what it says. I can't get around it. Any further questions? Thank you, Mr. Rosaro. Ms. Ripp, good morning. Counsel, may it please the Court. Good morning, Your Honors. My name is Amanda Ripp, and I represent IDOT, the appellee in this case. Is the position of the appellee that the trial court was correct when it barred three different sets of appraisal opinions offered by Qatar's appraisers? This Court should review this case under the abuse of discretion standard. Based upon appellant's admission in its reply brief that the issue on appeal is based upon the eminent domain law and the admissibility of the evidence, that's admitting that this case is about whether or not the trial court abused its discretion. It's not about whether the trial court improperly interpreted the city code. Under that admission, this Court should review this case under abuse of discretion. You don't mean the summary judgment denial? I don't mean that. I mean the motions for illuminate, which was the basis of the summary judgment denial. So the issue is whether or not the court properly exercised its decision in barring certain opinions into evidence. They are not contesting that the trial court improperly interpreted the city code. That issue was waived on appeal. They provided no argument with respect to that. They did not provide the court with the code. And they admitted in the reply brief under the first sentences that this case is about the admissibility of the evidence under eminent domain law. That's simply a mischaracterization. A rose is a rose is a rose. Here the court properly had barred these opinions because they were either irrelevant, because they were inconsistent with the plain meaning of the city code, they were unreliable, because they were based upon manipulated variance proceedings, or they were flawed, because they were based upon improper appraisal methodology or provided for compensation for which there was no compensation allowed. The first opinions that were barred by the trial court were the variance opinions. Those opinions were based upon two erroneous assumptions. The first assumption was that the variance was required, and the second assumption was that the variance would never be granted. And the record establishes that neither one of those assumptions were true. The first assumption was incorrect because under the city code, a variance was not required. The trial court has the power and the authority to interpret the law. Under that authority, it reviewed Braidwood's zoning code and it determined that there would be no trigger of the nonconforming status, but instead that that nonconformity would remain. It would continue after the taking. I have a question. Sure. I think the trial court found that a variance was not required under the ordinance. Who makes the decision about the variance? The trial court will make the decision because it's his determination regarding the admissibility of the evidence. Who makes the determination about actually whether or not a variance is going to be required? It's a question of law for the court. It's not a question for Braidwood because even if it was a question for Braidwood, that question could still be reviewed by a trial court and could be reversed if it was arbitrary, unreasonable, or capricious. The trial court has the authority to overrule a municipality. A municipality does not decide the law. The trial court decides the law. Okay, so you're saying that Braidwood and its zoning board could never, at any point in time, require a variance for this property? I'm saying that all that happened here was that two voluntarily submitted variance petitions were submitted and neither one was voted on. For evidence of Braidwood to have found that this property was illegal and it required a variance, it had to issue a citation, fine, or ticket That's the final decision by the municipality which is evidence that it found that a property was illegal and therefore needed a variance. That's the Williamson County decision of the U.S. Supreme Court and that's Lamar Whitecoe from the 2nd District from 2005. There is no evidence that Braidwood required a variance. The only evidence is that two voluntarily submitted variance petitions were made and neither one was ruled on. The first plan was tabled and the second plan was not voted on. Well, let me ask you, put it this way, I mean, obviously somebody's got to make, if this is an issue, somebody's got to make a decision. But Braidwood's not a party. So the trial judge in this case says, I look at this, no variance required. Imminent main case, settled, tried, whatever, comes to a conclusion. Then Braidwood comes in and says, hey, landowner, variance required. And they said, no, judge said that it isn't required. And then they say, well, so what? We weren't a party to that. We're not bound by that comment. So let's go litigate it again. I think there are two issues involved here. There's the issue of whether or not a property owner is free to submit plans and ask for 10-foot wide stalls versus 9-foot wide stalls and they're free to try to reconfigure their property in any way they want. The next question is, is that information reliable to then come into court and decide just compensation? The Illinois Supreme Court under Quincy Coach House has argued and has found that owners are required to mitigate their damages. And this court in Idaho v. Kelly has found that appraisal opinions that misrepresent the value of property don't come in. So you need to look at not just whether, how, if in fact Braidwood ruled, which I disagree it ruled. Again, a ruling would have been a citation fine or a ticket. Braidwood only looked at variance petitions and only ruled on the recommendations. There's no evidence in the record that Braidwood found that this was illegal, that property is operating today as a grocery store, and no variance has been required. So I think also, though, you need to look at, even if Braidwood had ruled based upon the petitions, I think this court and the trial court is obligated to review what happened at those petitions to see if they are, in fact, reliable evidence for the proposition of the opinion. Namely that a variance will never be granted. Those are a plan, again, IDOT's plan was just submitted and at the hearing, the counsel for Katara said that he wasn't an advocate of it, thought it was unsafe, was dangerous, and there would be no reason for the Zoning Board of Appeals to have recommended that plan because the owner had no intention of actually implementing it. So I don't believe the petitions were made in good faith. And Your Honor pointed out that the first petition exacerbated the nonconformity. There is no requirement to have parking islands, and I point the justices to the appendix pages A4 and A9 which show that without any mitigation, this property could have 77 parking spaces and there was sufficient room along the perimeter of the property to accommodate landscaping. Rather than acknowledge that, they presented a plan that under-parked the property when no mitigation at all would have had more parking. I don't think the plans that were presented were made in good faith and are representative of the opinion which the appraisers relied upon to come up with the conclusion that even if a variance was required, which I disagree there was, that one would never be granted. I think it's pretty clear that if a proper plan was presented, Braidwood was interested in approving a plan. I think Mr. Santorelli, who was the zoning officer, summed it up. You want me to close the only grocery store by noon? You want me hung by noon? Of course that was not going to happen. But I think it's important to understand because counsel keeps arguing that this was somehow a collateral attack on a decision by Braidwood. Braidwood made no decision. Braidwood just reviewed the variance petitions but never ruled on the actual plans. And again, even if it had, are those plans reliable evidence for the position that a variance will never be granted even if one was required? And I mention this also because there's another proposition which is the laws that you don't rely upon after date of filing activities. And what happened here is years after this case was filed these petitions were made. And they were made in the manner that I submit is not in good faith. And these were relied upon as opposed to what happened before the filing of this case which was the allowance of the building to be increased in size on two different occasions even on a smaller sized property and those were done without the need for a variance. So I would argue that there is clearly evidence of flexibility with the zoning code and there's evidence about how Braidwood looked at changes to the property and in particular this property. Not every change requires a variance. It's evidenced by what they did prior to the filing of this case. How long has this been going on? Since 2007. Okay. The pilot project is all done? It's been done since 2010. Which leads me to discuss about the First Bank of Schaumburg case and this court's decision in par. The First Bank of Schaumburg case supports the trial court's rulings. The First Bank of Schaumburg case was a situation where the trial court was reversed because it had admitted into evidence appraisal opinions that were based upon erroneous factual conclusions and erroneous interpretations of the law. The First District found that under those circumstances it's proper to bar valuation opinions. The variance opinions suffered from those same problems in this case. One, they were based upon the assumption that a variance was needed when one wasn't and they were based upon the assumption that a variance would never be granted even, you know, which were based upon denials which didn't exist. So the First Bank of Schaumburg case actually supports the trial court's ruling that it should have barred these variance opinions because they were not based upon reliable evidence. Another distinction about the First Bank of Schaumburg case is that in that case there was no dispute between the parties about how to interpret the code. The nonconformity in that case was simply about whether or not they met a 20-foot setback. There's not a lot of interpretation with respect to that. But this case  a need for the trial court to interpret the code because the parties had a disagreement about the interpretation of that code. So the First Bank of Schaumburg case does not support appellant's position and when you look at what actually would happen it supports and affirms the trial court's ruling which is not to allow appraisal opinions into evidence that are unreliable and based upon faulty information. And this court's decision in par further supports the court's ruling. This court ruled that the trial court must first decide whether or not there's evidence of an illegal condition. The trial court did that in this case. I think that you can continue to be illegal non-conforming you so I'm not going to allow your evidence into the jury before the jury. I don't think it's reliable. And then counsel seems to make this distinction that even that somehow this court is this case is different than par because there was evidence of an illegal condition meaning these were quote unquote denials of the plan. Again, I disagree there were denials of the plan but even if there were denials of the plan, this court noted that in the par decision even if the IEPA had ruled, that was still not going to be admissible. There were other reasons for that court to decide that that information would not be admissible. It may be unreliable. It may be prejudicial. And it may not be conformed with due process. That's no different than in this case. The trial court acts as the gatekeeper of the evidence and when he reviewed the evidence he did not find that it was sufficient to support those opinions. And so if you take appellate's interpretation of the par case, it means that the trial court acts as the gatekeeper of the evidence. The trial court determines whether or not the basis of the appraiser's opinion meets the minimum standards of reliability. If you were to accept appellate's interpretation of par, then any and every evidence would come before the jury, regardless of its prejudicial nature, its probative value, or if it violated some other provision of the law. Ms. Riff, Mr. Asaro said that it's now required that the parking spaces be ten feet. Does that make a difference in terms of the number of parking spaces that are going to be available? The fact that the zoning has changed on the property is not relevant because that's an after date of filing activity, which would not be admissible in court. And again, even if that is the requirement, relying upon ten foot wide stalls like the appraisers did and not recoup a single parking space and require $230,000 worth of mitigation to include landscaping, which was not required because that was legal nonconforming, that is not, if the appraiser's opinion is based upon a plan that does that, that is misrepresenting the value of the real estate because that's not mitigating damages. That's exacerbating damages. Okay. My question is the thing that's concerning me is the summary judgment. Okay. And the reason for my concern with the summary judgment is that the trial court found that a variance was not required. There was no finding, and I don't think there can be a finding, that a variance will never be required by the zoning board of the county. So I don't   summary  was necessary to find  variance. I don't think that the summary judgment was necessary to find a variance. I don't think to find a variance.  don't